Adam E. Lang (#022545)
Anthony T. King (#027459)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: alang@swlaw.com
       aking@swlaw.com

Attorneys for Plaintiffs Katerra Construction LLC
and Katerra Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Katerra Construction LLC and Katerra Inc., <br><br> Plaintiffs, <br><br> v. <br><br> 6327788 Canada Inc. d/b/a Woodsoft and Danny Hansen, <br><br> Defendants. | No. <br><br> **COMPLAINT** |

Plaintiffs Katerra Construction LLC and Katerra Inc. (collectively, "Katerra") for its Complaint against Defendants 6327788 Canada Inc. d/b/a Woodsoft ("Woodsoft") and Danny Hansen ("Hansen") (collectively, "Defendants"), hereby alleges as follows:

**PARTIES AND JURISDICTION**

1. Katerra Inc. is a Delaware corporation with a principal place of business in Menlo Park, California. Katerra Construction LLC is a Delaware limited liability company with a principal place of business in Scottsdale, Arizona and a fully owned subsidiary of Katerra Inc.

2. Woodsoft is a Canadian corporation doing business in Quebec, Canada.

3. Hansen is an individual and resident of Quebec, Canada.

4. At all relevant times, Hansen was Woodsoft's CEO, President, and sole officer. Hansen was also Woodsoft's sole shareholder.

5. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, because this lawsuit is between Delaware entities with principal places of business in Menlo Park, California and Scottsdale, Arizona, respectively, on the one hand, and citizens, corporations, or subjects of a foreign state, on the other hand, and the matter in controversy exceeds the sum or value of $75,000.00.

6. Personal jurisdiction and venue pursuant to 28 U.S.C. § 1391(a)(2) are proper in this Court and District on account of the actions alleged herein. Further, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

7. In addition, the contract at issue (discussed in the allegations below), negotiated by Hansen on Woodsoft's behalf and to which Woodsoft is a named contracting party, provides that actions, such as the present lawsuit, must be brought in state or federal courts in Phoenix, Arizona, and that the contracting parties submit to the jurisdiction and venue of any such courts. In addition, Hansen personally travelled to Arizona on multiple occasions to conduct business with Katerra in relation to the events described below. Hansen also frequently corresponded in writing and telephonically, with Arizona-based Katerra representatives and Woodsoft consultants on-site at Katerra in Arizona in relation to the events described below. Hansen is also the alter ego of Woodsoft and subject to jurisdiction in Arizona for the same reasons that Woodsoft is subject to jurisdiction in Arizona.

**FACTUAL ALLEGATIONS**

**I.  Katerra, Woodsoft, and the hsbCAD Software**

8. Katerra is in the business of, among other things, designing, manufacturing and selling structural components used in residential and commercial construction projects, such as custom-designed prefabricated structural panels and trusses.

9. Katerra is a licensee and user of certain third-party software (the "hsbCAD Software") licensed from third-party hsbCAD BVBA ("hsbCAD"). Katerra employees use

1 the hsbCAD Software to design and manufacture the structural component products Katerra sells to customers.

10. Because the hsbCAD Software is a powerful, customizable, and highly complex software platform, users of the hsbCAD Software, such as Katerra, frequently contract for the services of consultants with specialized training and experience using, administering, and customizing the hsbCAD Software.

11. Until December 31, 2019, Woodsoft was an authorized licensee and distributor of the hsbCAD Software. At all relevant times until December 31, 2019, Woodsoft's business included providing consulting services to North American hsbCAD Software users, such as Katerra users in Arizona.

## II.     The Agreement

12. On or around June 10, 2019, Hansen, on behalf of Woodsoft, prepared and transmitted to Katerra a quotation offering to provide on-site technical consulting services relating to the hsbCAD Software for a period lasting 12 months in exchange for payments to Woodsoft totaling $990,000.00 USD (the "Quotation"). A true and correct copy of the Quotation is attached as Exhibit A. The Quotation specified that three senior hsbCAD technicians would provide the consulting services for the hsbCAD Software on-site at Katerra facilities for the 12-month period, and identified a start date of August 5, 2019 and an end date of August 7, 2020.

13. On or around June 25, 2019, Katerra responded by transmitting to Woodsoft a purchase order ("Purchase Order") together with a document titled "Katerra PO Terms and Conditions" ("Terms and Conditions"). True and correct copies of the Purchase Order and the Katerra PO Terms and Conditions are attached as Exhibits B and C, respectively. The Purchase Order identifies a "Quote Number 1008703_5," which is the number appearing on the face of the Quotation. Ex. B, p. 1; Ex. A, p. 1. The Terms and Conditions identify a Purchase Order number "4600009996," which is the number appearing on the face of the Purchase Order. Ex. C, p. 1; Ex. B, p. 1.

14. The (i) Purchase Order, (ii) Quotation, and (iii) Terms and Conditions documents are collectively referred to herein as the "Agreement."

15. Pursuant to the Agreement, Woodsoft agreed to provide consulting services to Katerra, including, among other things, on-site technical support, in connection with the hsbCAD Software for a twelve-month period from August 5, 2019 to August 7, 2020, in exchange for payments to Woodsoft totaling $990,000.00 USD.

16. The Agreement includes an introductory recital stating, in relevant part, that:

> These terms and conditions shall apply to the purchase of … services ("Services") described on purchase orders ("Purchase Order(s)") issued by the Katerra entity set forth on the Purchase Order (the "Buyer") to the company identified as the seller on the Purchase Order (the "Seller").

Ex. C, p. 1.

17. The Purchase Order portion of the Agreement prominently identifies "6327788 Canada Inc. dba Woodsoft Solutions" as the relevant vendor and seller bound by the Terms and Conditions. Ex. B, p. 1.

18. Woodsoft accepted the Agreement, inclusive of the Terms and Conditions, and has been bound and obligated by its terms.

19. The Agreement provides that the Terms and Conditions "will be deemed irrevocably accepted by [Woodsoft]" unless Katerra receives an objection by Woodsoft "within (10) days" after receipt of the Purchase Order. Ex. C, ¶ 1. No such objection was ever received by Katerra.

20. The Agreement also provides that the Terms and Conditions "will be deemed irrevocably accepted by [Woodsoft]" if Woodsoft provided the services required by the Agreement. Ex. C, ¶ 1.

21. On or around August 5, 2019, Woodsoft promptly began providing consulting services for the hsbCAD Software on-site in Arizona pursuant to the Agreement as contemplated.

22. The warranty paragraph of the Agreement provides, in relevant part, that:

- 4 -

> In addition to any other express or implied warranties, seller warrants that any Services furnished pursuant to this Agreement shall be performed diligently, timely, professionally, and in accordance with all applicable professional and industry standards and applicable laws and regulations. C. In addition to any other rights Buyer may have, if Goods, Services and/or Deliverables delivered pursuant to this Agreement are found not to be as warranted, Buyer may return such items to Seller or require re-performance of the Service and/or Deliverable, at Seller's expense, for correction, replacement, full refund, or credit, as Buyer may direct.

Ex. C, ¶ 10.

23. The Agreement provides that actions, such as the present lawsuit, must be brought in the state or federal courts in Phoenix, Arizona, and that the contracting parties submit to the jurisdiction and venue of any such courts. Ex. C, ¶ 15(D).

24. The Agreement provides that the prevailing party in a dispute between the contracting parties "shall be entitled to recover its expenses, including reasonable attorney's fees, from the other party." Ex. C, ¶ 15(D).

### III. Katerra's Performance and Woodsoft's Non-Performance

25. On or around June 27, 2019, Woodsoft issued two invoices to Katerra pursuant to the Agreement, reflecting invoiced amounts of $540,000.00 USD and $450,000.00 USD (collectively, "Invoices"), respectively. A true and correct copy of the Invoices is attached as Exhibit D. Consistent with the terms of the Agreement, the invoices state that, in exchange for the recited payment amounts, Woodsoft would be providing full-time specialized services inclusive of three "senior hsbcad Technicians" for a period lasting at least 12-months, specifically from a start date of August 5, 2019 through an end date of August 7, 2020. Ex. D, p. 1-2.

26. Pursuant to the Agreement, and as reflected in the invoices, Woodsoft received a first wire payment in the amount of $540,000.00 USD on August 2, 2019, and a second wire payment in the amount of $450,000.00 USD on August 8, 2019. Ex. E.

27. Woodsoft does not dispute that Katerra has fully performed and that Woodsoft has received payments totaling $990,000 USD pursuant to the Agreement.

28. Woodsoft, however, has not fully performed. In particular, on or around September 2019, Woodsoft received notice that its status as an hsbCAD distributor would

1  be terminated and that, after December 31, 2019, Woodsoft would no longer be able to use
2  or license the hsbCAD Software to Katerra.

3      29.    While Woodsoft provided the consulting services to Katerra per the
4  Agreement from August 5, 2019 through December 31, 2019, Woodsoft promptly ceased
5  providing such services after December 31, 2019.

6      30.    Since December 31, 2019, Woodsoft has not provided consulting services to
7  Katerra as required under the Agreement.

8      31.    In January 2020, because of Woodsoft's breach, and in an effort to mitigate
9  its damages, Katerra retained hsbCAD North America, a third party, to provide the
10 consulting services that Katerra needed and paid for but Woodsoft had stopped providing.
11 Katerra has incurred and/or will incur damages as a result of it engaging a replacement
12 vendor in an amount to be proven at trial, but in no event less than $577,500 USD.

### IV. Woodsoft's Rejection of Katerra's Request for a Partial Refund

14     32.    On January 6, 2020, Katerra wrote Hansen, Woodsoft's CEO, asking how
15 Woodsoft proposed to perform the remainder of its obligations under the Agreement and
16 finish its consulting services for the hsbCAD Software. A true and correct copy of Katerra's
17 January 6, 2020 communication to Hansen is attached as Exhibit F, p. 4. Katerra's January
18 6, 2020 email also provided that Katerra would be entitled to a partial refund of $577,500
19 USD (a prorated portion of the $990,000 USD Katerra paid pursuant to the Agreement) if
20 an alternative solution was not available. Ex. F, p. 4 - 5. 577

21     33.    On January 8, 2020, Hansen responded but failed to provide a proposal for
22 Woodsoft to complete its consulting services for the hsbCAD Software, perform the
23 remainder of its obligations under the Agreement, or even agree to a partial refund. Ex. F,
24 p. 3-4. Instead, Hansen erroneously asserted that hsbCAD North America, a newly formed
25 subsidiary of hsbCAD BVBA, would be assuming Woodsoft's obligations under the
26 Agreement, purportedly "on behalf of Woodsoft." Ex. F, p. 3-4. While hsbCAD North
27 America has since provided consulting services to Katerra relating to the hSbCAD

Software, as Woodsoft had once provided, contrary to Woodsoft's claims, hsbCAD North America has done so on its own behalf, not "on behalf of Woodsoft

34. Further, at no time did Woodsoft transfer or assign to any hsbCAD entity (much less hsbCAD North America) any of its obligations under the Agreement or any of the rights or benefits Woodsoft received under the Agreement, including any portion of payments that Woodsoft received from Katerra but is wrongfully withholding.

35. In an email dated January 9, 2020, Katerra responded to Hansen and explained that Woodsoft was in breach of the Agreement. Katerra concluded its January 9, 2020 email by stating the "value of the balance of services remaining is $577,500" and requesting that Woodsoft take steps to provide the requested refund by January 15, 2020. Ex. F, p. 2.

36. Hansen responded in an email dated January 14, 2020, denying that Woodsoft was in breach and declining to provide any refund. Ex. F, p. 2.

37. On February 21, 2020, Katerra counsel wrote Woodsoft counsel explaining that Woodsoft had breached the Agreement and demanding a refund payment. Ex. G, p. 1-2. Katerra counsel attached to the February 21, 2020 letter a version of the Terms that Katerra believed matched the version of the Terms and Conditions to which Woodsoft had agreed.

38. On February 26, 2010, Woodsoft counsel responded, denying that Woodsoft breached the Agreement and declining to provide any refund. Ex. H, p. 1-2. Woodsoft counsel's February 26, 2020 letter also correctly pointed out the Terms and Conditions document forwarded with the February 21, 2020 letter did not match the Terms and Conditions Woodsoft had on file. Woodsoft counsel then forwarded the version of the Terms and Conditions Woodsoft had on file, which is the version attached hereto as Exhibit C and relied upon in this complaint.

**V.     Hansen's and Woodsoft's Unity of Interest, Ownership, and Control**

39.     At all relevant times, Hansen controlled, dominated, and operated Woodsoft. For example, Hansen was Woodsoft's CEO, President, sole officer, and, on information and belief, Woodsoft's sole shareholder.

40.     Woodsoft failed to observe corporate formalities such as the holding of regular director or shareholder meetings.

41.     On information and belief, Woodsoft was and is but a mere shell, instrumentality, or conduit to fund Hansen's personal expenses or other business projects unrelated to and with no consideration to Woodsoft.

42.     For example, Hansen frequently used funds from Woodsoft's bank accounts to pay for personal and family expenses without consideration to Woodsoft.

43.     In particular, Hansen has used funds from Woodsoft's bank accounts to, among other things, purchase a residence in Île Perrot, Quebec used by Hansen's son or other family members and, more recently, to purchase property in Florida in or around November or December 2019. Hansen also used funds from Woodsoft's bank accounts to lease a 2019 Chevrolet truck for his personal use and to lease a 2017 Cadillac sedan SUV for his wife, who was not a Woodsoft employee at any relevant time. Hansen made these expenditures using Woodsoft funds without providing anything of value in return to Woodsoft.

44.     Starting on or around December 2019 Woodsoft began winding down its business.

45.     As of the date of this Complaint, Woodsoft has ceased all business operations and moved out of its leased office space.

46.     On information and belief, to the extent any Woodsoft assets presently exist, including what remains of the $990,000 USD Woodsoft received from Katerra in August, such assets are being used for Hansen's personal expenses or benefits, including those discussed above, or to fund other business ventures of Hansen's, unrelated to Woodsoft, for

1  the benefit of Hansen. Further, such conduct jeopardizes and/or will jeopardize Katerra's ability to enforce any monetary judgments in Katerra's favor in this action.

47. Upon information and belief, Defendants are the alter-egos of each other, and for all intents and purposes are one and the same. At all relevant times, there existed a unity of interest, ownership, and control between Defendants such that any separateness between them has ceased to exist, if it in fact ever existed.

48. The failure by the Court to recognize this unity of interest would constitute a fraud upon the Court and result in a manifest injustice.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

49. Katerra repeats and incorporates herein by reference the allegations set forth above as though fully set forth herein.

50. In June 2019, Katerra and Woodsoft entered into the Agreement whereby Woodsoft agreed to provide, among other things, consulting services relating to the hsbCAD Software for a period of 12 months in exchange for payments totaling $990,000 USD.

51. Although Woodsoft received payments totaling $990,000 USD as of August 8, 2019, and although Woodsoft knew that Katerra's payment was to be used to provide consulting services for a period of 12 months, with such period concluding on August 7, 2020, Woodsoft provided consulting services only for a period of less than 5 months and ceased providing such services on December 31, 2019.

52. Woodsoft has materially breached the Agreement, including, among other provisions, Paragraph 1 of the Terms and Conditions and those of the Purchase Order and Quotation obligating Woodsoft to provide consulting services for a period of 12 months. Woodsoft has also materially breached, among other provisions, Paragraph 10(C) of the Agreement obligating Woodsoft to provide services in a timely and diligent manner and to cover expenses associated with replacement services and/or to provide up to a full refund at Katerra's direction. Ex. C, ¶ 10.

53. Further, as a result of Woodsoft's material breaches of the Agreement and Katerra's need to procure the consulting services Woodsoft had stopped providing, Katerra has now paid and/or is obligated to pay far more than the originally contemplated $990,000 USD to receive the same consulting services for the hsbCAD Software contemplated in the Agreement.

54. Woodsoft has failed to refund any portion of the $990,000 USD received.

55. Katerra performed each and every obligation owed by it under the Agreement.

56. As a direct and proximate result of Woodsoft's breaches and wrongful conduct described herein, Katerra has been damaged in an amount proven at trial, but in no event less than $577,500 USD, in addition to attorneys' fees, costs, and interest.

## SECOND CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

57. Katerra repeats and incorporates herein by reference the allegations set forth above as though fully set forth herein.

58. On or about June 25, 2019, Katerra and Woodsoft entered into the Agreement. The respective obligations of the parties thereto have been spelled out more particularly above, as well as in the express terms of the Agreement.

59. There was an implied covenant of good faith and fair dealing whereby Woodsoft covenanted that it would act in good faith in honoring its obligations to Katerra and do nothing to impair Katerra's rights under the Agreement.

60. Katerra performed each and every obligation owed by it under the Agreement.

61. Woodsoft breached its obligations under the Agreement as described more particularly above, failed to act in good faith, and impaired Katerra's rights under the Agreement by, among other things, failing to provide consulting services for a period of 12-months and failing to refund any portion of the $990,000 USD received.

62. As a direct and proximate result of Woodsoft's breaches and wrongful conduct described herein, Katerra has been damaged in an amount proven at trial, but in no event less than $577,500 USD, in addition to attorneys' fees, costs, and interest.

## THIRD CAUSE OF ACTION

### (Unjust Enrichment)

63. Katerra repeats and incorporates herein by reference the allegations set forth above as though fully set forth herein.

64. Defendants benefitted, and Katerra was impoverished to its detriment, by Woodsoft retaining the full sum of no less than $577,500.00 USD paid to it by Katerra without providing any benefit in exchange. As a result, Woodsoft was unjustly enriched, to Katerra's detriment, in an amount of no less than $577,500.00 USD, in addition to attorneys' fees, costs, and interest.

65. It is inequitable and unjust for Woodsoft to retain the full amount paid by Katerra. Woodsoft, however, has failed and refused to remit or refund any payment, much less the amount owed.

66. There is no lawful justification for Defendants' withholding of the amount owed.

67. As a natural and foreseeable consequence thereof, Katerra has been damaged in an amount to be proven at trial, but in no event less than $577,500.00 USD, in addition to attorneys' fees, costs, and interest.

## FOURTH CAUSE OF ACTION

### (Alter Ego/Piercing the Corporate Veil)

68. Katerra repeats and incorporates herein by reference the allegations set forth above as though fully set forth herein.

69. Upon information and belief, at all relevant times herein, Woodsoft was and is but a mere shell, instrumentality, or conduit to fund the personal living expenses and/or other business projects of Hansen.

70. Upon information and belief, at all relevant times herein, there exists and existed a unity of interest, control, and ownership between Woodsoft and Hansen, such that any individuality and separateness between them has ceased, and Hansen is the alter-ego of Woodsoft.

71.  Adherence to the fiction of the separate existence of Woodsoft as an entity distinct from Hansen would permit an abuse of the corporate privilege and would sanction fraud or promote injustice. Such abuse will render or has rendered Woodsoft insolvent and unable to meet its obligations to its creditors, including Katerra.

## PRAYER FOR RELIEF

WHEREFORE, Katerra prays for judgment as follows:

A.  For judgment against Defendants (including Hansen as the alter ego of Woodsoft), jointly and severally, on each of Katerra's claims;

B.  For damages to be determined at trial, but in no event less than $577,500 USD;

C.  For pre-judgment and post-judgment interest at the maximum legal rate;

D.  For costs and attorneys' fees pursuant to the Agreement and A.R.S. §§ 12-341 and 12-341.01; and

E.  For such other and further relief as the Court deems just and proper.

DATED this 31st day of March 2020.

SNELL & WILMER L.L.P.

By: s/ Adam E. Lang
Adam E. Lang
Anthony T. King
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Attorneys for Plaintiffs Katerra Construction LLC and Katerra Inc.

4817-7414-5465